EHRLICH, Chief Justice,
concurring in part and dissenting in part.
I concur with the majority’s conclusion that the referee erred by recommending that Caillaud be reinstated as a member in good standing without requiring proof of rehabilitation. I dissent, however, from that portion of the majority opinion which approves the disciplinary measure of suspension recommended by the referee.
In making his recommendation, the referee quoted extensively from the respondent’s Memorandum Concerning Law and Discipline. The referee found merit in the respondent’s pledged resolve to avoid any such actions in the future. This factor, however, relates to the issue of rehabilitation rather than mitigation of the conduct. The fact that respondent’s actions worked no injury is merely fortuitous and does not mitigate the seriousness of the conduct at issue. The fact that respondent has been deprived of his livelihood for a significant period of time is the natural consequence of his own wrongful conduct, and the fact that he was not “offered” an opportunity to fully present his position until six months ago is due to the fact that respondent chose to plead guilty to the four felony charges. That respondent has fully complied with all requirements of New York state authorities with regard to his criminal convictions and all orders of the referee with regard to the disciplinary proceeding is no more than what was legally required of respondent and likewise does nothing to lessen the gravity of his offense or the degree of discipline which is appropriate. Finally, the fact that respondent received no personal benefit or gain from his unauthorized and unlawful acts is irrelevant to the question of whether respondent’s conduct was of such nature as to justify revocation of his privilege to practice law in Florida.
While I agree with the referee that “enough is enough,” I do not believe that the discipline recommended by him, suspension of three years, is enough. Caillaud pled guilty to four counts of unauthorized practice of medicine on four separate victims. The acts underlying these counts consisted of administering a physical examination, including the diagnostic checking of the vital organs; treating a patient suffering from a sore throat by the adminis *1172 tering of a hypodermic syringe containing what was represented to be an antibiotic, taking a throat culture, and diagnosing an infection of the larynx; treating a patient for a purported ulcer by administering an oral anesthetic or pain killer and catheterizing for the alleged purpose of taking a culture; and treating a patient suffering from chest pains by administering what was purported to be an EKG, administering several injections of purported adrenaline for the purpose of regulating the heartbeat, and prescribing and giving oral medication.
Respondent’s conduct offered the potential for injury and possibly death to innocent people who submitted their bodily ills to him under the mistaken belief that he was a medical doctor. That he would impersonate a medical doctor and undertake the care and treatment of the ills of others displays to me a total lack of knowledge and feeling of what it means to be a professional. Such misconduct merits no less than disbarment, in my opinion.
Even if a three-year suspension is proper, I believe respondent should be required to successfully take the Florida bar examination to demonstrate technical competence since he will have been out of the practice for more than three years.
Hence, I dissent from that portion of the majority opinion which imposes the referee’s recommended discipline of a three-year suspension.
KOGAN, J., concurs.